### GIFFORD *v.* CORRIGAN.

*(Supreme Court, General Term, Second Department.* February 11, 1889.)

1. DEED—DELIVERY—EVIDENCE—CHURCH PROPERTY.

    The title to property of the Roman Catholic Church is frequently vested in the archbishop. Deeds are sent to the chancery office, through which real-estate business is transacted, and generally do not go to the archbishop. The archbishop was informed of a certain deed of church property given by a parish priest to him, containing a clause assuming a mortgage, which he was requested to pay. The deed, which was recorded, was afterwards delivered into the chancery office, into which also the rents of the property were paid. The property was never entered in the books of the chancery office, but they did not contain a complete record of church property. The chancellor told the parish priest to have nothing to do with a part of the property, but the latter continued to collect and pay over the rents, and there was no disclaimer of title to other property in the deed. *Held* sufficient evidence of delivery to and acceptance by the archbishop.

2. COVENANTS—RELEASE—RIGHTS OF THIRD PERSONS—MORTGAGEES.

    The grantor in a deed which contains a covenant to assume and pay a mortgage cannot release the covenant without the mortgagee's consent.

    BARNARD, P. J., dissenting.

Appeal from special term, Westchester county.

Mortgage foreclosure by Silas W. Gifford, receiver, etc., of John M. Masterton, against Father Mathew's Total Abstinence Society No. 1 of Tuckahoe,

John McCloskey, archbishop of New York, William P. O'Connor, executor, etc., of John McEvoy, deceased, and others. The mortgage was given by the society, and payment of it was assumed in a deed by it to McEvoy, and in a deed by McEvoy to McCloskey. O'Connor, as executor, etc., afterwards executed to McCloskey a release of the covenant in the deed to the latter. Defendant McCloskey having died, defendant Corrigan, his executor, was substituted. Judgment for deficiency was entered against Corrigan as executor, etc., and he appeals. The following is the opinion delivered at special term:

"BROWN, J. The main question in this action is whether the deed describing and purporting to convey the mortgaged premises from John McEvoy to Cardinal McCloskey was actually delivered to and accepted by the grantee. In determining this question of fact certain other facts, which are undisputed, need to be stated. McEvoy was a Roman Catholic priest, having charge of a parish at Tuckahoe, in Westchester county, and had acquired title to the mortgaged property in 1870. Before the execution of the deed to the cardinal, McEvoy had acquired title to other lands than those covered by the mortgage, and the deed purports to convey not only the mortgaged premises, but another lot adjoining, of about the same size. The title to church property in the Roman Catholic Church is frequently vested in the archbishop, and the business relating to the real estate so held is transacted through the chancery office, of which, at the time of the occurrence of the events narrated, Father Preston was the head or chancellor, and William P. O'Connor the secretary. This office was the proper depository of all deeds of church property. Father Preston testifies in reference to deeds: 'It [the deed] is ordered to be sent to me, and is filed away in my office. It generally does not go to the archbishop at all.' From and after the year 1878, Father Keogh was parish priest at Tuckahoe, having charge, under the direction of the archbishop of the church property at that place. Keeping this fact in view, I think the evidence in reference to the particular deed in question shows that it was delivered to and accepted by the archbishop. It is true, it was not personally delivered to him, but it was delivered to those who had authority from the archbishop to accept it, and who, under the rules relating to the charge and care of the church property, were its proper custodians. McEvoy had acquired the property for church purposes, and it is fair to assume that by the deed in question it was intended to transfer the title to the archbishop for the same purpose. The deed is dated May 8, 1878, and was recorded two days later. In January, 1880, the archbishop was informed by Mr. Chas. H. Ostrander, who was at that time the attorney for the mortgagee, of the existence and record of the deed, and of the clause assuming upon his part the payment of the mortgage, and that he was liable to the mortgagee, and was requested to pay the mortgage, He told Mr. Ostrander that he had referred the matter to Father Keogh, and that he (Ostrander) would hear from him about it; and a few days thereafter Father Keogh called on Mr. Ostrander, and talked with him about it. In 1882, Father McEvoy took the deed to the chancery office, and delivered it to Mr. O'Connor, the secretary, who received it; and it does not appear from the evidence that it was ever returned to McEvoy. At this time, in 1880, when Ostrander saw and spoke with the archbishop about the property, Father Keogh was in possession of the building on the mortgaged premises, leasing it out, and collecting rents therefrom, and paying them to the chancery office, and this he did every year from 1879 to 1885, inclusive. The accounts of Father Keogh, containing statements of the rent collected from the mortgaged premises, were all examined by O'Connor in the regular course of business, and the money was turned into the parish funds. These facts clearly import a delivery and acceptance of the deed. The only evidence to contradict this conclusion is that of Father Preston, that, when he heard of the collection of rents from the hall on the mortgaged premises, he told Father Keogh that 'he must have nothing to do with that property,' and the fact that the property

was never entered in the books of the chancery office. With reference to the last fact it is sufficient to say that the books do not contain a complete record of church property. The statement of Father Preston to Father Keogh cannot be regarded as a repudiation of the deed, in view of the fact that it was made in 1882, and for three years after that Keogh continued to collect the rent, and pay it over to the chancery office. Nor does it appear that at the time of the direction aforesaid there was any intent of returning to McEvoy or Keogh the rents that had been previously collected. As already stated, the deed conveys not only the mortgaged premises, but also an adjoining piece of land. There is no claim made that when attention was called to the deed at the time of its delivery by McEvoy to O'Connor, or at any time since, there was any disclaimer of taking title to the adjoining lot. This fact, as well as the acceptance of the rents, characterizes the transaction, and shows clearly the acceptance of the deed. With reference to the release, I think it was not competent for the executor of McEvoy, without the consent of the mortgagee, to release the archbishop from the covenant in the deed. The plaintiff must have judgment, with costs."

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Boardman & Boardman*, for appellant. *R. E. Prime*, for respondent.

PRATT, J. The facts which show that the deed of Father McEvoy was delivered to and accepted by Cardinal McCloskey are so fully considered in the opinion of the special term that further discussion is uncalled for. It may well be, as claimed for defendant, that the delivery was not to the cardinal in person, but it is shown to be in the hands of his agent; and when his personal attention was called to the fact there was no effective disclaimer.

The only question remaining is the validity of the release. Whether a covenant in a deed in which a mortgage is assumed can be released by the immediate parties without consent of the mortgagee is a question which is not entirely settled. The better opinion seems to be that suggested in 105 N. Y. 228, 11 N. E. Rep. 498, to the effect that such release will be ineffectual. As the right of the mortgagee does not depend upon privity of contract, but upon principles of equity arising from the situation, it is not easy to see how the right of the mortgagee should be affected by acts to which he is not a party. The special term decision to that effect is in harmony with the generally received opinion, and the judgment must be affirmed, with costs.

DYKMAN, J., concurs.

BARNARD, P. J., (*dissenting.*) The court of appeals held in this case that the deed was intended to convey a title for church purposes, and that the grantee, Cardinal McCloskey, obtained no personal beneficial interest therein. The grant is to Cardinal McCloskey as archbishop of New York. The lands are in this diocese. Although the deed contains the clause that the grantee assumes the mortgage on the property as part of the purchase price, the covenant is not one of the deceased cardinal personally. The cases that hold that a title is a mere description of the person do not cover this case. It seems to me clearly to be embraced within the principle established by *Whitford* v. *Laidler*, 94 N. Y. 145. The evidence fails to make a different case from that heretofore presented to the court of appeals. *Gifford* v. *Corrigan*, 105 N. Y. 223, 11 N. E. Rep. 498. The evidence shows that Cardinal McCloskey was told some 18 months after the deed was executed that he was liable on this assumption clause, and it was read to him. He made no reply, except that he would "communicate with Father Keogh about it." The book of the church lands contained no memorandum, or even mention, of a conveyance of these lands. The deed remained in the possession of the grantor until he died, in 1882, it having been executed in 1878. There is not a fact in the case

that is not at variance with the finding that Cardinal McCloskey either intended to or did assume the payment of the mortgage in question. The judgment should therefore be reversed, and a new trial granted, costs to abide the event.